VIOLET BLACKMAN *vs.* HARRY R. COFFIN.

Suffolk. February 9, 1938. — June 1, 1938.

Present: RUGG, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Evidence*, Admissions, Affecting credibility of witness, Of criminal proceedings, Admitted generally, Conflicting statements of witness. *Negligence*, Gross, Motor vehicle, In use of way, Contributory.

On the issue, whether a defendant was grossly negligent in operating an automobile at ·a certain time and place, his affirmative answer to an interrogatory propounded to him, whether he was the person "who was found guilty" by a certain court "for operating an automobile while under the influence of intoxicating liquor" at the same time and place, was properly excluded, the answer not constituting an admission of guilt nor, with no evidence of sentence, affecting his credibility.

Facts set forth in a statement in writing by a plaintiff, given to the defendant in an action for personal injuries and introduced in evidence by the defendant and admitted generally, which were more favorable to the plaintiff than his own testimony and were not unequivocally repudiated by him in later testimony, were proper for consideration by the jury.

Evidence showing intoxication of the operator of an automobile, known by a passenger therein, excessive speed, persistent ignoring of remonstrances by the passenger, and inattention to dangers in "considerable traffic," required submission to the jury of the issues of gross negligence of the operator and contributory negligence of the passenger.

TORT. Writ in the Superior Court dated July 23, 1935.

A verdict for the defendant was ordered by *M. Morton*, J. The plaintiff alleged exceptions.

The case was submitted on briefs.

*H. F. Wood & J. L. Burns,* for the plaintiff.

*T. H. Mahony & R. J. Coffin,* for the defendant.

DOLAN, J.    This is an action of tort to recover for personal injuries sustained by the plaintiff while riding as a guest in an automobile owned and operated by the defendant.   The case was referred to an auditor whose findings of fact were not to be final and who filed his report in which he found for the defendant.   Thereafter the case was tried to a jury, and now comes before us on the exceptions of the plaintiff to the exclusion of certain evidence, and to the action of the trial judge in directing a verdict for the defendant at the close of the evidence.

The plaintiff testified in direct examination substantially as follows: On the evening of June 15, 1935, the defendant called on the plaintiff at her home on Upland Road in Cambridge, and invited her to go for a ride in his automobile. Before leaving the plaintiff drank two "weak gin and ginger-ales" and the defendant "had" three.   The parties thereafter left the plaintiff's home and the defendant drove the plaintiff to her sister's home in Arlington.   Shortly after their arrival the defendant drove the plaintiff, her sister and the latter's husband to Massachusetts Avenue, where the plaintiff's sister did some shopping.   The defendant then drove them back to the home of the plaintiff's sister, where all remained in the automobile until about 11:30 P.M.   The plaintiff's sister and her husband then entered their home, and the defendant started to drive the plaintiff home.   At that time the defendant seemed to the plaintiff to be in full possession of his faculties and perfectly sober. The plaintiff did not notice anything unusual about the defendant on the way home until he started to speed up on Massachusetts Avenue.   Before the accident happened he began to "drive so terribly quickly" that the plaintiff said to him, "Please go slower . . . Please be careful."   She "was frightened and he said nothing."   She "thought" the "car" was going between forty and fifty miles an hour. The defendant did not slow down and at a point near the intersection of Massachusetts Avenue and Tannery Street

(which is distant between one and a quarter to two miles from the home of the plaintiff's sister) the automobile collided with the beacon on a safety island. The plaintiff was thrown forward and her "head went through the windshield." She was removed to a hospital where eight stitches were taken down the side of her face and five across one of her kneecaps. The plaintiff called her sister and the latter's husband as witnesses. They testified that the defendant had nothing to drink at their home on the night in question, and that there was nothing about the defendant's conduct in driving the automobile while they were in it which attracted their attention, and that he appeared to be perfectly sober and in full possession of his faculties.

While in the hospital the plaintiff made a statement relative to the accident which was reduced to writing and which she signed. The statement was put in evidence by the defendant as an exhibit, and recites that when the defendant called at her home he told her that "he had had some beer"; that at that time she saw nothing in his actions that would indicate that he was in any way intoxicated; that before they left the plaintiff's home they both had three highballs made of gin which the defendant had brought with him; that when driving to the plaintiff's sister's home the defendant's "driving was not very bad"; that the plaintiff did not consider it very dangerous but she did ask him "to drive slow," which he did; that while at her sister's home the defendant had one highball; that as they started to return to the plaintiff's home the defendant was cheery, "At this time he was noticeably feeling his drinks"; that as they left the defendant's driving was somewhat erratic and the plaintiff asked him to "drive slow"; that as they drove down Massachusetts Avenue the defendant was not driving at an excessive rate of speed; that as they approached the intersection of Tannery Street, the defendant was driving "astraddle" of the Boston ingoing car line; that then "a car came up from behind us and to our right," and was about parallel "with us when we hit the traffic beacon post"; that the plaintiff thought that the defendant was trying to avoid the other "car" to

his right when he hit the post; that just before the defendant's vehicle hit the post, the plaintiff said "'Do be careful'. However, it was too late."

On cross-examination prior to the introduction in evidence of that written statement the plaintiff testified substantially as on direct examination and repudiated the declarations contained in her written statement that the defendant had a highball at her sister's home. She reiterated that the defendant appeared to be perfectly sober and in full possession of his faculties up to the time they got on Massachusetts Avenue "on the home trip," and asserted that the "only criticism that she had of . . . [the defendant's] driving was the speed at which he was travelling — nothing else." and that she did notice some automobile "come up beside them, travelling in the same direction — not specially on their right." In redirect examination after the introduction in evidence of that written statement the plaintiff contented herself for the most part with saying that "she did not recall" making many of the declarations contained therein.

The auditor found that Massachusetts Avenue "is a public highway, is a broad thoroughfare with double car tracks in its center with safety islands at intervals throughout its length from Harvard Square to Arlington Center"; that "The night was clear and the street was dry"; that he was "satisfied that the defendant had nothing to drink from the time he left the plaintiff's house on Upland Road at about 9:30"; and that "while in Arlington he showed no signs of being in any way under the influence of liquor, although he was 'feeling his drinks' somewhat when the couple first left" the plaintiff's home. The auditor states: "While there was testimony from the plaintiff that she estimated the speed of the car at about fifty miles per hour just before the accident I do not believe this estimate to be accurate, although I am satisfied that the speed was such as to cause the plaintiff to caution the defendant to drive more slowly. The evidence is conflicting as to whether the defendant was crowded into the island by another car which passed him on his right, or whether the defendant

turned his head to obtain the registration number of a carelessly driven car and, in so doing, drove into the island. . . . I consider it a matter of conjecture whether or not the defendant was in any degree under the influence of liquor at the time of the accident. Unless he was under the influence of liquor to such a degree as to affect his operation of the car, I do not find that his conduct constituted gross negligence. If, on the other hand, he was so under the influence of liquor, which I do not find to have been the fact, he became so in the presence and with the knowledge of the plaintiff, who, nevertheless, elected to ride with him to Arlington and elected to return from Arlington with him. She . . . had ample opportunity to leave the car at Arlington. . . . I do not find, however, that the defendant was grossly negligent and I therefore find for the defendant."

The defendant did not testify at the trial or introduce any evidence other than the auditor's report and the exhibit before referred to, and the plaintiff offered his answers to interrogatories filed by the plaintiff to the effect that the plaintiff asked him to go "a little slower"; and that the speed of his automobile was thirty-five miles per hour fifty feet from the point of collision.

The defendant's attorney objected to the admission in evidence of interrogatory numbered 19 and the defendant's answer thereto. The trial judge excluded them subject to the plaintiff's exceptions. The interrogatory and answer so excluded read as follows: "Interrogatory #19. 'Are you the Harry R. Coffin who was found guilty by a Justice of the Third District Court of Eastern Middlesex on July 2, 1935, for operating an automobile while under the influence of intoxicating liquor on Massachusetts Avenue, near Tannery Street, in Cambridge, on June 15, 1935?' Answer #19. 'Yes.'" We think that the exclusion of the interrogatory and answer was not error because the fact elicited had no evidential value to impeach the credibility of the defendant, being unaccompanied by any evidence of sentence, see *Karasek* v. *Bockus*, 293 Mass. 371, 372; *Commonwealth* v. *Bishop*, 296 Mass. 459, 461–462; see also *Labrie* v. *Midwood*,

273 Mass. 578, 581; G. L. (Ter. Ed.) c. 233, §§ 21, 23; and did not constitute an admission or confession on his part of having been under the influence of liquor at the time of the accident. With reference to this subject matter the present case is distinguishable from cases where it has been held that a plea of guilty of a violation of a statute (G. L. [Ter. Ed.] c. 90, § 24), prohibiting the operation of motor vehicles so as to endanger the lives and safety of the public, is some evidence of negligence the weight of which is for the jury. See *Dzura* v. *Phillips*, 275 Mass. 283, 289, 290. An admission that one has been found guilty, as it happened in the present case, of violating the same section of the statute as that considered in the case just cited, is not an admission of the fact of violation, and has no probative force to show gross negligence on the part of the defendant.

The testimony of the plaintiff relative to the condition of the defendant as to sobriety at the time of the accident conflicted with the evidence elicited by the defendant from her signed statement. That signed statement of the plaintiff, though properly admissible only as an admission by the plaintiff or as a statement inconsistent with her testimony, does not appear to have been offered for any such limited purposes, but as far as appears, was offered and admitted generally. It was therefore in the case in favor of either party upon all questions as to which it had a rational bearing. See *Solomon* v. *Dabrowski*, 295 Mass. 358, 359, and cases cited; *Drew* v. *Drew*, 250 Mass. 41, 45. See also *Wireless Specialty Apparatus Co.* v. *Priess*, 246 Mass. 274, 279; *Crowley* v. *Swanson*, 283 Mass. 82, 85. The plaintiff in her testimony when confronted with her written statement did not so clearly and definitely repudiate her declarations contained therein that she could not rely upon them as against her testimony, under the rule stated in *Sullivan* v. *Boston Elevated Railway*, 224 Mass. 405, if that rule applies, as we do not decide, to the circumstances of the present case. The evidence being conflicting, it was for the jury to say what the truth was, and they could have found that at the time of the accident the defendant was operating his automobile under the influence of intoxicating liquor

(see G. L. [Ter. Ed.] c. 90, § 24) and at an excessive rate of speed. See G. L. (Ter. Ed.) c. 90, § 17, and *Kohutynski v. Kohutynski*, 296 Mass. 74. The jury could also have found that the defendant was driving his vehicle "astraddle" the Boston bound track of a street railway on a highway where there were safety islands at intervals; that "there was considerable traffic moving about"; that the plaintiff was "frightened" at the speed at which the defendant was driving and just before the accident asked him to go "slower" and to "be careful"; but that notwithstanding her request he did not slacken speed and collided with the beacon of the safety island; and that, in consequence, the plaintiff suffered severe personal injuries.

In this combination of circumstances we think that it cannot be said as a matter of law that issues of the defendant's gross negligence and the plaintiff's due care were not presented for determination by the jury.

*Exceptions sustained.*