ESTHER G. PINA vs. McGILL DEVELOPMENT CORPORATION.

Middlesex. October 8, 1982. — February 14, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, & NOLAN, JJ.

*Evidence*, Prior inconsistent statement. *Practice, Civil*, Relief from judgment, Instructions to jury, Verdict. *Fraud*.

The defendant at the trial of a negligence action was not prejudiced by the exclusion from evidence of certain documents consisting of insurance claim forms signed by the plaintiff's attorney and a physician's report submitted to an insurer on her behalf where, even if the documents had been admissible as prior inconsistent statements by the plaintiff as to the location at which she had suffered her injuries, they would have been cumulative of other evidence which adequately presented that issue. [164]

Evidence of prior statements by the plaintiff in a tort action, which were inconsistent with her testimony at trial as to the location at which she had suffered her injuries, was not sufficient to establish perjury such as would require allowance of the defendant's motion under Mass. R. Civ. P. 60 (b) (3) for relief from judgment on the ground that the plaintiff had committed fraud on the court. [165-167]

Prosecution of a declaratory action by the plaintiff in a related tort action, for the purpose of preventing an insurer from asserting its statutory lien on the judgment proceeds, after the plaintiff's attorney had represented to the court hearing the tort action that the declaratory action would be discontinued, did not rise to the level of wrongful conduct that would require allowance of the defendant's motion under Mass. R. Civ. P. 60 (b) (3) for relief from a judgment favorable to the plaintiff in the tort action on the ground that she had committed fraud on the court. [167-168]

A jury's verdict in a tort action was not rendered void by reason of the judge's supplementary charge, modeled in part on the charge in *Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 (1851), where the judge also instructed in language cautioning jurors not to surrender views which they conscientiously held, and where the jury continued their deliberations for an additional five hours after the supplementary charge was delivered, before reaching their verdict. [168-170]

CIVIL ACTION commenced in the Superior Court on April 30, 1976.

The case was tried before *O'Connor*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Vincent Galvin* (*Robert E. Riley* with him) for the defendant.

*Mary Jane Morgen* (*William H. Shaughnessy* with her) for the plaintiff.

LIACOS, J. This case and *Pina* v. *Liberty Mut. Ins. Co.*, *post* 1001 (1983), arise out of an injury suffered by the plaintiff, Esther G. Pina, when she fell as she was leaving work. After her employer's insurer, Liberty Mutual Insurance Company (Liberty Mutual), paid workmen's compensation benefits to Pina, she brought an action in tort against her employer's lessor, McGill Development Corporation (McGill), alleging that she was injured as a result of negligent maintenance of the parking lot outside her place of employment. In October, 1979, a jury awarded the plaintiff damages in the sum of $125,000. A posttrial motion by McGill for relief from judgment was denied. Mass. R. Civ. P. 60 (b) (3), 365 Mass. 828 (1974). The Appeals Court affirmed the judgment. 13 Mass. App. Ct. 966 (1982). We allowed McGill's application for further appellate review and consolidated this appeal with the appeal by the plaintiff in *Pina* v. *Liberty Mut. Ins. Co., supra.*

McGill contends that the denial of its motion for relief from judgment was error. McGill based its motion for posttrial relief on allegations of fraud perpetrated on the court by Pina. See Mass. R. Civ. P. 60 (b) (3). McGill argues that Pina received workmen's compensation benefits on her original claim that she fell on the stairs at her employer's premises, while she recovered tort damages on the basis of later statements that she fell in the parking lot. McGill argues these claims to be inconsistent and to demonstrate a deliberate and calculated plan to use the judicial system in an unconscionable and fraudulent manner. McGill also argues that an action by Pina against Liberty Mutual for a

declaratory judgment to prevent reimbursement to Liberty Mutual for the benefits paid to Pina, and the inaccurate representations by Pina's counsel at the posttrial motion hearing that the action against Liberty Mutual would be discontinued, are further evidence of a fraudulent scheme by Pina.

Additionally, McGill alleges error in the exclusion of certain documentary evidence containing inconsistent statements allegedly made by Pina relative to the location of her accident. Finally, McGill argues that the verdict of the jury is void as a compromise verdict.

We conclude there was no reversible error in the exclusion of the challenged documents. We also conclude that the trial judge was correct in denying the motion for relief from judgment and that the judge's supplementary charge did not result in a compromise verdict. Accordingly, we affirm the judgment.

We summarize the facts pertaining to the appeals. The plaintiff was employed by Microguard, Inc. (Microguard), located in Woburn. The premises had been leased to Microguard by McGill. On January 3, 1975, Pina was injured by a fall on snow or ice as she was leaving work. The employer's first report of injury, filed on January 21, 1975, by Microguard with Liberty Mutual, Microguard's workmen's compensation insurer, indicates that the injury occurred when "she slipped on ice on the stairs leading to [the] parking lot." Liberty Mutual conducted an investigation of the claim. As a result of its investigation, Liberty Mutual accepted Pina's claim for workmen's compensation benefits. The plaintiff received workmen's compensation benefits in excess of $60,000. In April, 1976, the plaintiff filed a third-party tort action against McGill, alleging that she had fallen in the parking lot. G. L. c. 152, § 15. Slightly over three years later, Liberty Mutual learned of Pina's third-party action against McGill and, on June 26, 1979, notified all parties of its claim for reimbursement of workmen's compensation payments. See G. L. c. 152, § 15. Pina commenced a suit against Liberty Mutual in September, 1979, for a declaratory

judgment that Liberty Mutual is barred by the statute of limitations (G. L. c. 260, § 2A) from asserting its claim.

At the McGill trial, the plaintiff testified that she fell in the parking lot while getting into her car approximately eight feet away from the stairs. A witness for the plaintiff also testified that Pina fell in the parking lot. On cross-examination, Pina denied reporting to her employer, her physician, or the hospital that she had fallen on the stairs. Another witness gave testimony that Pina reported to her employer that she had fallen on the stairs. An excised copy of the injury report submitted by the employer to Liberty Mutual was also admitted to show that Pina had previously claimed to have fallen on the stairs. In addition, McGill pointed out to the jury that the hospital admission record, introduced in evidence by the plaintiff, also stated that she "fell on the stairs of the building." The judge did not allow the workmen's compensation claims supervisor at Liberty Mutual to testify. The judge excluded certain documents from evidence, apparently as hearsay.

After closing argument in which counsel for McGill drew the jury's attention to the evidence that contained the prior inconsistent statements of the plaintiff, the judge instructed the jury that it was their responsibility to decide the weight and credibility of the evidence. The jury were also instructed that, before they reached the question of negligence by McGill, they first must decide whether Pina fell in the parking lot or on the stairway. The judge noted to the jury, "If she fell on the stairway, she cannot recover."

After several hours of deliberation, the jury sent a communication to the judge that they were divided and doubted their ability to reach a verdict. Carefully warning the jurors not to surrender a conscientiously held view simply to compromise, the judge gave a supplementary charge relative to the importance of being open to another's view and of being willing to reassess one's position. The defendant McGill objected in part to language in the charge calling for a certain amount of humility and charity from a juror. The jury finally returned a special jury verdict in favor of Pina in the

amount of $125,000 against McGill.[1]  Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974).

Shortly thereafter, McGill filed several posttrial motions, including a motion for relief from judgment on the ground of fraud.  See Mass. R. Civ. P. 60 (b) (3).  At an evidentiary hearing on November 20, 1979, the judge declined to conclude that the excluded evidence, two claim forms and the surgeon's report, proved a fraud on the court.  He noted that these claim forms with the inconsistent statement were properly excluded because they had not been signed by the plaintiff, nor was there any evidence that the plaintiff's attorney had authority from the plaintiff to submit the statements to the insurer.  The surgeon's report was excluded because the author was unavailable and there was no authentication of the report.  As further proof that Pina had perpetrated a fraud on the court by hiring one attorney to pursue her workmen's compensation claim by claiming a fall on the stairs and hiring a second attorney to prosecute a tort claim against a third party, alleging a fall in the parking lot, McGill pointed out to the judge that Pina had commenced a suit in September, 1979, for a declaratory judgment against Liberty Mutual to preclude it from asserting its claim of reimbursement from the proceeds of the instant action.[2]  On inquiry by the trial judge at the posttrial motion hearing, plaintiff's counsel represented that Pina's action against Liberty Mutual would be discontinued.  The judge denied the posttrial motions.

In an appeal by the defendant McGill from the judgment for Pina, the Appeals Court concluded that the trial judge

---

[1] The defendant sought and received a judgment by default for indemnification from the employer Microguard.  Microguard had ceased to do business in 1976 or 1977.

[2] In early November, 1979, Liberty Mutual sought an injunction prohibiting McGill from paying the judgment without first reimbursing Liberty Mutual.  The injunction was denied on November 26, 1979.  Liberty Mutual then moved to have the plaintiff's action for declaratory judgment dismissed.  The judge allowed the motion to dismiss.  It is the dismissal of her action for declaratory judgment that the plaintiff is appealing in the related case.

had not erred in excluding certain evidence and in denying the motion for relief on the ground of fraud. *Pina* v. *McGill Dev. Corp.*, 13 Mass. App. Ct. 966 (1982).

1. *Excluded evidence.* Because McGill depends upon the excluded documents containing prior inconsistent statements to support its allegation of fraud, we shall deal first with its claim of reversible error in this regard. During the trial, McGill made an offer of proof that three documents contained prior inconsistent statements by Pina. Two claim forms received by Liberty Mutual on behalf of Pina stated that she had fallen on the stairs. The forms were not signed by the plaintiff, but were signed only by her attorney. The surgeon's report, completed by her attending physician and sent to Liberty Mutual, indicated that Pina had reported to her doctor that she had fallen against a step. The doctor was unavailable, however, as a witness, and no evidence was produced relative to the authentication of the report.

Even assuming, arguendo, that the documents were admissible as prior inconsistent statements to impeach Pina's credibility, for the exclusion of such evidence to cause a reversal, the record must demonstrate that the exclusion prejudiced the case. *Bendett* v. *Bendett,* 315 Mass. 59, 65-66 (1943). Cf. *Murphy* v. *Conway,* 360 Mass. 746, 750 & n.3 (1972); *Jewett* v. *Dow,* 333 Mass. 187, 190 (1955). There is no showing of prejudice resulting from the exclusion of the proffered evidence. McGill was permitted to introduce the injury report submitted by the employer stating that Pina had fallen on the stairs; only the portion indicating that it was an insurance form was left off. The hospital admission notes, stating that Pina had fallen on the building stairs, were read to the jury. A witness testified that Pina reported to her employer that she had fallen on the stairs. Sufficient conflicting evidence as to where the accident occurred had been admitted so that the judge instructed the jury that it must determine the location of the accident. Any additional evidence as to the statements made by Pina regarding the location of the accident would have been merely cumulative. There was no reversible error by the judge in excluding these documents.

2. *Fraud.* McGill claims that the trial judge erred in the denial of its motion for relief from judgment on the ground of fraud on the court.[3] Rule 60 (b) (3) of the Massachusetts Rules of Civil Procedure allows relief from a final judgment, order, or proceeding on the basis of "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party."[4] " 'Fraud upon the court' should, we believe, embrace only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Lockwood* v. *Bowles,* 46 F.R.D. 625, 631 (D.D.C. 1969), quoting from 7 Moore's Federal Practice par. 60.33, at 512 (2d ed. 1968). Fraud, however, is not presumed.

McGill maintains that Pina succeeded in undermining the administration of justice by recovering for the same accident through the power of two tribunals of justice, based on two different sets of material facts relative to the alleged location of the accident. McGill argues that the plaintiff was awarded damages on the basis of perjured testimony. Use by a winning party of perjured testimony is an example of intrinsic fraud. See J.W. Smith & H.B. Zobel, Rules Practice § 60.9, at 479, 481 (1977). Cf. *Reynolds* v. *Remick,* 333 Mass. 1, 9-10 (1955). Prior to the promulgation of rule 60 (b) (3), intrinsic fraud was not a ground for setting aside a judgment because "[a] contention that some part of the material testimony was false might be made with plausibility in a large proportion of the cases that are tried. A conten-

[3] McGill also claimed that it was error for the trial judge to deny its motion to set aside the judgment on the basis of a fraud on the court. Since the defendant is presenting the same evidence and theory for both motions, we address the issue under Mass. R. Civ. P. 60 (b) (3), 365 Mass. 828 (1974).

[4] Because the language of rule 60 (b) (3) is substantially the same as Fed. R. Civ. P. 60 (b) (3), subsequent to the 1946 amendment, the construction given to the Federal rule is to be given to our rule, absent compelling reasons to the contrary. See *Farley* v. *Sprague,* 374 Mass. 419, 423-424 (1978).

tion that the prevailing party knowingly gave or procured false testimony, upon an issue involved, might be made and strongly supported in a great many cases. It is against public policy to open cases on no other ground than this." *Zeitlin* v. *Zeitlin*, 202 Mass. 205, 207 (1909). Although rule 60 (b) allows relief from intrinsic fraud, the policy stated in *Zeitlin* demonstrates that, in order for the defendant to establish such intrinsic fraud, the defendant here must prove "the most egregious conduct involving a corruption of the judicial process itself," *Lockwood* v. *Bowles, supra* at 632, by establishing to the satisfaction of the trial judge that there was perjured testimony which influenced the judgment of the court. The judge made no such finding.

"It is well established that denial of a motion under Rule 60 (b) will be set aside only on a clear showing of an abuse of discretion." *Murphy* v. *Administrator of the Div. of Personnel Admin.*, 377 Mass. 217, 227 (1979). See *Schulz* v. *Black*, 369 Mass. 958 (1975). The defendant relies on the holding in *Peacock Records, Inc.* v. *Checker Records, Inc.*, 365 F.2d 145, 147 (7th Cir. 1966), for its contention that it is an abuse of discretion not to set aside a judgment if it was obtained in part by the use of perjury. McGill's reliance is misplaced. The *Peacock* decision involved a situation where the court had affidavits before it by witnesses swearing that they had committed perjury. Such is not the case here.

McGill has not established that Pina committed perjury. It presented evidence that she made prior inconsistent statements, but such statements are not the equivalent of perjury. Although the transcript does contain some evidence that the plaintiff stated that she had fallen on the stairs, it was within the province of the jury to determine the credibility of the witnesses and the weight to be given the evidence. See *Assmann* v. *Fleming*, 159 F.2d 332, 337 (8th Cir. 1947); *Gilmour* v. *Strescon Indus., Inc.*, 66 F.R.D. 146, 153 (E.D. Pa. 1975). McGill was permitted to present to the jury evidence of alleged prior inconsistent statements by the plaintiff. It was not denied the opportunity to present its case.

See *Bunch* v. *United States*, 680 F.2d 1271, 1283 (9th Cir. 1982); *Gilmour* v. *Strescon Indus., Inc., supra.* The jury chose to believe the plaintiff's contention that she fell in the parking lot. There was no abuse of discretion by the judge in ruling that no fraud had been committed on the court.

The second allegation of fraud made by McGill is that Pina instituted her action against Liberty Mutual to prevent it from asserting its statutory lien on the proceeds of the tort judgment. Rule 60 (b) (3) authorizes a trial judge to set aside a judgment for fraud collateral (extrinsic) to the suit. Based on representations by counsel that the action would be discontinued and that Liberty Mutual would be reimbursed, the judge denied the motion and implicitly found that the suit against Liberty Mutual did not constitute fraud. The defendant argues, however, that the continued active prosecution of Pina's suit against Liberty Mutual is fraud on the court.[5]

The defendant relies on the case of *Hazel-Atlas Glass Co.* v. *Hartford-Empire Co.*, 322 U.S. 238 (1944). That case involved the procurement of a judgment that was manifestly unconscionable. The challenged judgment was against Hazel-Atlas Glass Co. (Hazel) for infringement of a patent held by Hartford-Empire Co. (Hartford). Hazel asked the United States Court of Appeals for the Third Circuit to set aside the judgment. Evidence was presented that Hartford had deliberately and knowingly caused, at considerable expense, the writing and publication of an article under the name of an ostensibly disinterested expert, extolling the device to be patented as a remarkable advance. *Id.* at 240-241. The article was then used by Hartford to persuade the Patent Office to grant its patent application. *Id.* at 247. In the later patent infringement action, Hartford urged the article on the Third Circuit Court of Appeals and prevailed. *Id.* The deliberate fraud was discovered when Hartford was prosecuted by the United States government in an unrelated

---

[5] The underlying basis of this aspect of the fraud claim appears to be that the plaintiff will obtain double recovery. This issue is concluded by our opinion in *Pina* v. *Liberty Mut. Ins. Co., supra.*

antitrust action. *Id.* at 243. The United States Supreme Court ordered the judgment set aside on the basis of this obvious fraud. *Id.* at 251.

*Hazel* is distinguishable on its facts. It is true that counsel for the plaintiff in this case was wrong not to bring to the judge's attention later that the plaintiff's intention to discontinue had not come to fruition. Such conduct, however, does not rise to the level of a deliberate and calculated plan to use the judicial system in an unconscionable and fraudulent manner. Poor judgment by the plaintiff does not constitute a fraudulent scheme. No fraud has been committed on the court.

3. *Compromise verdict.* The defendant argues that the judge's supplementary charge coerced the jury to produce a compromise verdict which is void. We have reviewed the record and disagree with the characterization of the verdict as having been coerced by the supplementary charge.[6]

---

[6] The supplementary charge given by the judge was as follows:

"Mr. Foreman and ladies and gentlemen of the Jury, I have received your communication over the Foreman's signature, which I am going to read out loud for the record and then I want to make a couple of comments. The message is as follows: 'The Jury is seriously divided. At this time, all the members of the Jury feel that the prospect for arriving at a verdict with the required majority of votes is very small.' Signed by the Foreman.

"Mr. Foreman and ladies and gentlemen of the Jury, I stated to you in the course of my instructions that it is important that nobody surrender his or her conscientiously held view, simply for the purpose of compromise; coming to some agreement that will enable you to leave the courthouse right away. And, I repeat the same thing, that it is perfectly appropriate to say that nobody should compromise with his or her conscience just to get out of here. At the same time, I also indicated, and I say to you again, that it is very important that the Jurors be open to one another's view. And that means that you not only speak openly, but that you listen, and I mean listen with a view to reassessing your own position, if that perhaps seems to be indicated. I want to say to you that this situation that you may think you find yourselves in is not unique; it is not unusual for conscientious people. And it happens because people are conscientious. It is not unusual for conscientious people, each one of whom is trying to do the right thing, to have trouble coming to an agreement. And, you shouldn't be ready to quit because, that is the way things are. Up to a point, anyway, perhaps that is a good indication that everybody is doing his or her level best to see that justice is done in this case. But, I do want

The judge apparently modeled his charge, in part, on the charge in *Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 (1851). We have regarded such remarks "as going nearly if not quite to the extreme limit," *Highland Foundry Co.* v. *New York, N.H. & H.R.R.*, 199 Mass. 403, 407 (1908), and have "expressed our disapproval of the *Tuey* charge . . . in so far as it (1) informs the jury that the case must at some time be decided and (2) tends to induce those jurors tentatively in the minority to be persuaded by those in the majority" (citation omitted). *Commonwealth* v. *Jones*, 373 Mass. 423, 427-428 (1977).

---

to urge you to really be open to one another and to be ready to reassess your own position in the light of positions that are held by other people who are as conscientious as you are.

"In order to be a good Juror, if you don't mind me saying this, a certain amount of humility and a certain amount of charity are called for. And you have to recognize that as strongly as you may feel about a particular question, perhaps you are not right about that and maybe you ought to take another look in the light of the fact that others feel differently and re-assess it. Ultimately, of course, you cannot subscribe to a verdict that your conscience doesn't permit you to subscribe to. But, you want to have sufficient exchange and sufficient willingness to look charitably upon the views of others and to provide, as I say, the environment in which an agreement can grow.

"Now, I'm sure I don't have to tell you that it is highly desirable that you achieve a verdict in this case and that you answer these questions. And, I know that you are all aware of all the time and effort, yours and the time and effort of all of the other trial participants that have gone into this trial. It is desirable, certainly, that that not all be wasted. There's absolutely no reason for anyone to think that some other jury at some other time is going to be in any better position than you are to answer these questions. There is no reason to think that the next jury is going to be more gifted or better disposed to terminating the controversy which the parties want terminated and which is desirable to be terminated. There is no reason to believe that you're not absolutely as capable of achieving a verdict in this case, as any other jury that we could possibly assemble would be.

"So, I'm going to ask you to return to your deliberations and try to get sort of a new start and do the best you can to come to an agreement. I neither want to compel that nor, could I if I wanted to. I can't make anybody agree to what he or she isn't going to agree to. I am only telling you that it is certainly desirable that that be accomplished. And I want you to understand, that this is not an unusual situation, and I hope that you are willing to give it another go. And, I'm going to ask you to do that, please."

The judge's supplementary charge must be read in light of the whole charge. See *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 842 (1980); *Washington* v. *Sullivan*, 357 Mass. 766, 767 (1970). The judge chose his words with considerable care. He carefully warned the jurors "that it is important that nobody surrender his or her conscientiously held view, simply for the purpose of compromise . . . . [N]obody should compromise with his or her conscience just to get out of here." Furthermore, the jury had deliberated approximately eight hours before the judge gave his supplementary charge. After the charge the jury continued their deliberations for approximately another five hours. In these circumstances, it is doubtful the jury were coerced into reaching a verdict because of the supplementary charge.

*Judgment affirmed.*