ALICE GENOVA *vs.* ATTILIO E. GENOVA.

No. 88-P-719.

Middlesex. November 10, 1989. - June 4, 1990.

Present: BROWN, CUTTER, & KASS, JJ.

*Evidence*, Hearsay, "Self-serving" evidence, Prior inconsistent statement, Admissions and confessions. *Public Record. Motor Vehicle*, Report of accident. *Practice, Civil*, Instructions to jury.

At the trial of a negligence action where the plaintiff did not make an objection on proper grounds to the defendant's offer of an accident report he had filed conformably with G. L. c. 90, § 26, the report was properly received in evidence. [649-650] BROWN, J., dissenting.

An accident report filed in accordance with G. L. c. 90, § 26, is properly admissible to impeach the testimony of the person who filed it with respect to the events recited therein [650-652], or, in appropriate circumstances, under the admission exception to the hearsay rule [652-653], or as a public record [653].

CIVIL ACTION commenced in the Superior Court Department on March 13, 1986.

The case was tried before *Hiller B. Zobel, J.*

*Chris A. Milne* for the plaintiff.

*Frank W. Kilburn* for the defendant.

KASS, J. Alice Genova, the plaintiff, brought an action against her husband, Attilio E. Genova, seeking compensation for injuries suffered by reason of his negligence while driving an automobile in which she was a passenger. The trial was bifurcated. On the issue of liability, a jury returned a general verdict for the defendant. The plaintiff appeals, asserting primarily that a report of the accident which her husband filed with the police was wrongly admitted in evidence. We affirm.

What the jury had to consider was whether the defendant husband had been negligent in attempting a U-turn and, if

so, whether that negligence had been a proximate cause of the accident. On the wife's version of events, the husband negotiated the U-turn without properly checking what traffic was coming from behind him. In his accident report, filed conformably with G. L. c. 90, § 26, the husband's account was that he had looked in his side-view mirror before beginning to negotiate the U-turn, that he had seen a car heading in his direction about 600 feet away and travelling at a moderate speed. He had proceeded into his turn, but when he had almost completed it, being mostly over the center line of the street, a third car came up very fast — at 70 miles per hour — passed the car the defendant had earlier spotted and slammed into the Genova vehicle on the driver's side.

At trial, the account the husband gave of the accident on the witness stand was similar but less favorable to him in some respects. He testified that he checked traffic in his rear-view mirror (rather than his side-view mirror), although, during cross-examination he reflected he might have looked in both; that he saw a car about one eighth mile away which was not going fast; he signalled with his directional and began his U-turn; he did not look back again; when he heard the screech of brakes, he looked to the left and saw a car ten to fifteen feet away; when the collision occurred he was five feet over the double yellow line; the oncoming vehicle was moving about fifty miles per hour (rather than seventy); the oncoming vehicle had left skid marks of sixty feet (rather than sixty-five); and he did not see the car he had originally viewed in the mirror (rather than observing it being passed by the vehicle which hit his).

The differences are matters of detail: the speed of the oncoming vehicle, the skid marks, and whether it was passing the vehicle the husband first saw in his mirror. For purposes of analysis, we are prepared to assume that the accident report version was more favorable to the husband to an extent that the report may have been a factor in the jury's verdict; i.e., its admission in evidence may have affected the outcome.

The husband's accident report was received in evidence during cross-examination by defense counsel of a policeman,

Officer Leather, who had been called by the plaintiff. Officer Leather had initially come to the accident scene and had conducted some follow-up investigation. Defense counsel had asked Officer Leather whether he had with him the husband's accident report. Leather answered, "Yes, sir." There ensued a colloquy.

DEFENSE COUNSEL: "I'd like to offer it."

PLAINTIFF'S COUNSEL: "Objection, your Honor."

THE COURT: "What ground? Just one or two words, that's all I need. What ground?"

PLAINTIFF'S COUNSEL: "Self-serving, your Honor. Not kept in the ordinary course of business. The Registry would be proper place, and certified copy."

THE COURT: "Objection's overruled."

After a short interval to allow for elision of references in the report to the defendant's insurance carrier, the report was admitted in evidence.

That the report could properly be admitted is not instantly obvious. Certainly in the hands of Officer Leather, it was hearsay. Indeed, even had the report been his, made on the basis of facts furnished to him by witnesses, it would have been excluded for the reasons explicated in *Kelly* v. *O'Neil*, 1 Mass. App. Ct. 313, 316-317 (1973). On second look, however, the report was rightly admitted.

1. *The adequacy of the objection.* Relying largely on *Commonwealth* v. *Fatalo*, 345 Mass. 85, 87 (1962), the plaintiff argues that uttering the word, "self-serving," constituted an adequate statement that the proffered evidence was objected to on hearsay grounds. In the *Fatalo* case the court explained that no principle of law excludes evidence simply because it is self-serving. *Ibid.* The evidence which a party offers will be as self-serving as that party can make it. See *United States* v. *Matot*, 146 F.2d 197, 198 (2d Cir. 1944). Extrajudicial declarations of a party offered in the party's behalf are excludable not because they are self-serving, but because they offend against the hearsay rule. *Fatalo* at 87. Thus, in the *Fatalo* case the self-serving evidence was admitted because it was not hearsay. To state that an excludable self-serving

statement is one which is hearsay does not stand for the obverse, that "self-serving" is code for hearsay when making an objection.

It will be recalled that plaintiff's counsel also said, "Not kept in the ordinary course of business. The Registry would be proper place, and certified copy." That was a closer signal. The document was not being offered, however, as a business record under G. L. c. 233, § 78, and, thus, the objection was still obscure. We may affirm on the ground that a correct objection was not made to the defendant's accident report when it was offered. See *Sidney Binder, Inc.* v. *Jewelers Mut. Ins. Co.*, *ante* 459, 463-464 (1990), and authorities cited.

2. *Basis for admission of the accident report on the merits.* Even if a proper objection had been made, in the out-of-the-ordinary circumstances which attended this case, the accident report could have been received in evidence as a prior statement of the defendant which was inconsistent with his testimony at trial or in the nature of an admission of the defendant. What makes this otherwise run-of-the-mill negligence case uncommon is that it is between a wife and a husband.

When a spouse (in this case the wife) seeks through a law suit to recover damages for injuries suffered in a car accident caused by the negligence of the other spouse (the husband), one may suppose the husband's enthusiasm for the defense is muted. Assuming the marriage is intact, as it is in this case, the family unit wins only if the husband loses. Any recovery will come not from his pocket, but from that of his insurance carrier. See *Sorensen* v. *Sorensen*, 369 Mass. 350, 362-363 (1975).

With a defendant in such a state of mental conflict at trial, much is to be said in favor of a generous disposition to admission of prior extrajudicial statements more favorable to the defendant than his testimony at trial. The former may have spontaneity and be contemporaneous; the latter colored

by the defendant's considerable stake in losing.[1] For those reasons, there is unusual probative value to the husband's accident report, filed within a week of the event, which gives the account of the accident most favorable to him, namely that the vehicle which hit him came out of nowhere at tremendous speed and hurtled into the Genova vehicle as the husband was negotiating his U-turn.

(a) *Prior inconsistent statement.* Attilio Genova's earlier account of the accident impeaches that which he gave at trial and, as such, is appropriately admissible as a prior inconsistent statement of a witness. See *Blackman* v. *Coffin,* 300 Mass. 432, 437 (1938); *Wheeler* v. *Howes,* 337 Mass. 425, 427 (1958); *Malloy* v. *Coldwater Seafood Corp.,* 338 Mass. 554, 567 (1959); Liacos, Massachusetts Evidence 135-137 (5th ed. 1981). Cf. *Pina* v. *McGill Dev. Corp.,* 388 Mass. 159, 164 (1983). The sequence in which the prior inconsistent statement came in evidence was irregular. Customarily, prior inconsistent statements are received to cast doubt on what a witness has testified to at trial. Here, the accident report came in through Officer Leather, not its author, before the defendant gave trial testimony to be challenged by his prior statements.

It is not necessary to reverse simply because the accident report came in evidence at the wrong time and through the wrong witness. Cf. *Commonwealth* v. *Saarela,* 376 Mass. 720, 723-724 (1978). The defendant was available in court to be examined — and was examined — about differences between his trial testimony about the accident and the report he made after the accident. Indeed, the defendant confirmed that he had made the accident report which had been admitted and that it was in his handwriting.

An extrajudicial prior inconsistent statement is generally admitted only for its impeachment purposes, not its truth.

---

[1]Conversely, an accident report could be colored by a desire to avoid blame while the solemnity of testifying under oath in court produced a more balanced account. Which version is more plausible in a particular case is for the finder of fact to sort out, a task which can be performed only if the disparate versions are available. See *Sorensen* v. *Sorensen,* 369 Mass. at 363-364.

See *Wheeler* v. *Howes*, 337 Mass. at 427; Liacos, Massachusetts Evidence at 137. To hold the prior inconsistent statement only to its impeachment effect requires a request for a limiting instruction. *Commonwealth* v. *Costa*, 354 Mass. 757 (1968). *Commonwealth* v. *Swenson*, 368 Mass. 268, 274 (1975). *Commonwealth* v. *Gil*, 393 Mass. 204, 220 (1984). *Schwartz* v. *Goldstein*, 400 Mass. 152, 154 (1987). See Liacos, Massachusetts Evidence at 141-142; *Blackman* v. *Coffin*, 300 Mass. at 437. See also Proposed Mass.R.Evid. 105. Plaintiff's counsel never made such a request. When Mr. Genova's report came in through Officer Leather, it may have required a degree of prescience on the part of plaintiff's counsel to anticipate that the report's contents would vary from Mr. Genova's testimony in court. Before the jury charge, however, plaintiff's counsel had the entire lay of the evidentiary land and could have requested the limiting instruction.

(b) *Admission.* If one pauses to consider the theory of admissibility for receiving in evidence the admission of a party, the driver's report in this case fits in that category of hearsay exception. An admission is offered against a declarant who is a party because the party is present in court to qualify and explain it. See Morgan, Admissions as an Exception to the Hearsay Rule, 30 Yale L.J. 355, 361 (1921). An admissive declaration is also received because it is closer in time to the event and less colored by concern about the outcome of the trial. Hughes, Evidence § 512 at 690 (1961).

At first glance, the accident report is the opposite of an admission in that it favors the position of Attilio Genova in his status as a defendant. For an example of a classic admission see *Brown* v. *Metropolitan Transit Authy.*, 341 Mass. 690, 695 (1961), *S.C.*, 345 Mass. 636 (1963). Bearing in mind, however, that in an interspousal negligence action, an insurance company is the real party in interest on the defense side (see *Sorensen* v. *Sorensen*, 369 Mass. at 362-363; *Lewis* v. *Lewis*, 370 Mass. 619, 623-624 [1976]), we think that the report has the same quality as an admission, viz., it is a declaration by a party, closer in time to the event, at variance

with what the party has said at trial, adverse to the party's position at trial, and which the party may explain or qualify in court. At trial, Mr. Genova paradoxically had an interest in appearing more, rather than less, culpable so far as the accident was concerned. In its peculiar setting, the report could, therefore, have been received as an admission. See *Blackman* v. *Coffin*, 300 Mass. at 437.

3. *The report as a public record.* The defendant's accident report was a public record. *Lord* v. *Registrar of Motor Vehicles*, 347 Mass. 608 (1964). Under G. L. c. 90, § 26, the person under a duty to make an accident report is required to file a copy with the police having jurisdiction over the place where the accident occurred. Properly identified as a public record, such a report may be admitted. See Liacos, Massachusetts Evidence at 196. In view of the positions we have taken in points 1 and 2 of this opinion, we need not decide whether, in light of its later adoption by the defendant, the report was properly introduced through a police officer of the department having jurisdiction over the accident (Officer Leather fit that description), or whether it was necessary to have the document identified by an officer in charge of the records of the department.

We conclude that the plaintiff's objection was inadequately focussed and that, in any event, the defendant's accident report was, in the circumstances, admissible.

*Judgment affirmed.*

BROWN, J. (dissenting). I agree with much of the majority's analysis: that the contents of the accident report were hearsay; that, because of the discrepancy in certain details between it and the husband's trial testimony, its admission in evidence may have affected the outcome; and that, because of the special circumstances attendant upon an interspousal action, there is unusual probative value to the report.

Nevertheless, I would be constrained to reverse the judgment for the reason that the report was admitted, over the

plaintiff's objection,[1] for its full probative value. *Kelly* v. *O'Neil*, 1 Mass. App. Ct. 313, 316-317 (1973). The sequence of events at trial exacerbated the error, for the report was admitted through Officer Leather, the plaintiff's first witness. Thus, the "prior inconsistent statement" of the husband was before the jury, without limitation, even before the husband himself had been called as a witness.[2]

However salutary the majority's suggestion may be that we interpret generously exceptions to the hearsay rule in the context of interspousal negligence actions, I cannot agree with what strikes me as a substantial change in the law.

---

[1]In my view, the plaintiff's objection, though perhaps not precisely on the mark, was sufficient to preserve the issue for review. *Commonwealth* v. *Fatalo*, 345 Mass. 85, 87 (1962).

[2]As to the question whether the report may have been admissible as a "public record" in one sense of that term — availability for public inspection under G. L. c. 66, § 10 (*Lord* v. *Registrar of Motor Vehicles*, 347 Mass. 608 [1964]) — it does not necessarily follow that the contents of the report are admissible under the official written statement exception to the hearsay rule. On that point, *Kelly* v. *O'Neil*, *supra* at 318-319, also is controlling.