WINTHROP CORPORATION *vs.* FRANK LOWENTHAL.

Nos. 88-P-781 & 88-P-782.

Norfolk. June 13, 1989. - August 28, 1990.

Present: WARNER, C.J., SMITH, & FINE, JJ.

*Arbitration*, Award, Attorney's fees, Vacating award. *Fraud. Contract*, Contingent fee agreement. *Attorney at Law*, Compensation, Contingent fee agreement. *Damages*, Attorney's fees. *Practice, Civil*, Judgment, Relief from judgment. *Judgment*, Relief from judgment.

Where, based upon the language and purpose of a provision in a contract calling for arbitration of any disagreement with regard to any matter connected with the contract and providing for reasonable attorney's fees to the prevailing party, this court concluded that the parties intended that the prevailing party would be reimbursed for the legal fees it was obligated to pay its attorney provided that such fees did not exceed an amount determined to be reasonable, it followed that the attorney representing the prevailing party was required to disclose, either to the arbitrator or the Superior Court judge who approved the arbitrator's award, the existence of a contingent fee agreement that the attorney had entered with his client prior to the arbitration proceedings; however, this court did not, in the circumstances, conclude that the attorney's conduct in not disclosing the contingent fee agreement amounted to a fraud on the court. [184-187]

On a motion by a party to an arbitration proceeding to vacate a judgment awarding damages including the prevailing party's legal fees and costs, this court concluded from the record that compelling or extraordinary circumstances required relief under Mass.R.Civ.P. 60 (b) (6) and, consequently, vacated that portion of the arbitrator's award establishing legal fees on the ground that it was "procured by . . . undue means." [187-189]

CIVIL ACTIONS commenced in the Superior Court Department on September 13, 1985, and September 9, 1986, respectively.

Upon consolidation for trial, the case was heard by *Ernest S. Hayeck*, J., sitting under statutory authority, and a motion to vacate judgment was heard by *Harry J. Elam*, J.

*Stephen Gordon* (*Vincent M. Simko* of Connecticut with him) for the plaintiff.

*Leonard M. Singer* for the defendant.

SMITH, J. Frank Lowenthal entered into a contract with Winthrop Corporation (Winthrop) whereby he agreed to write a computer program for that company. The contract called for arbitration of "any disagreement . . . with regard to any matter connected . . . [with the contract]." It also provided, "[i]n the event that any action or proceeding is brought in connection with the Agreement, the prevailing party therein shall be entitled to recover its costs and reasonable attorney's fees." A disagreement arose between the parties concerning payment to Lowenthal for alleged extra work. under the contract, and the dispute was submitted to arbitration. Mr. Leonard Singer of the law firm of Csaplar & Bok represented Lowenthal at those arbitration proceedings.

Before the hearings were completed, at the request of the arbitrator, counsel for both parties submitted affidavits and records concerning the amount of their legal fees and costs as a result of the arbitration. Mr. Singer's affidavit stated that the attached records showed "Csaplar & Bok had paid disbursements in the amount of $842.33 and that Csaplar & Bok's normal time charges for the time spent on its representation of Mr. Lowenthal would be $33,881.80." Mr. Singer estimated in the affidavit that additional time charges through the conclusion of the arbitration hearing would be $3,000. He represented that the "fair and reasonable value of the time and disbursements expended and to be expended . . . is $37,624.13."

In support of that affidavit, Mr. Singer submitted records which list in detail the services that Mr. Singer and other members of the law firm had performed for Lowenthal in connection with the arbitration proceedings. The records are entitled "Billing Memorandum" and are in the name of "Frank Lowenthal." They show, in hours and portions thereof, the entire time spent on each particular task. A dollar value is listed beside the actual time spent. A running

total of the dollar value is displayed on the records. In addition, most of the records carry a line item at the bottom entitled, "Fee Basis: Contingent Fee:   %   %   %   %   % Current: 0." The spaces preceding the percent signs are blank.

The arbitrator found, in favor of Lowenthal on the extra pay issue and awarded him $17,200 in damages. He next considered the amount of "costs and reasonable attorney's, fees" to be awarded to Lowenthal as the prevailing party. Relying on Mr. Singer's affidavit and the accompanying records, the arbitrator awarded an additional sum of $35,400, which, he stated, "represents Lowenthal's legal fees and costs."[1] A Superior Court judge confirmed the arbitrator's award. See G. L. c. 251, § 11. Final judgment was entered in the amount of $72,251.46.[2]

Over a year after final judgment had entered, Winthrop brought a motion to vacate the judgment, pursuant to Mass.R.Civ.P. 60(b)(3), 365 Mass. 828 (1974). In the motion, Winthrop asserted that it had recently learned that Mr. Singer, on behalf of Csaplar & Bok, had entered into a contingent fee agreement with Lowenthal prior to the arbitration proceedings.[3] That agreement set forth the legal fee that Lowenthal was to pay to Csaplar & Bok for its services in representing him at the arbitration proceeding. Mr. Singer, according to the motion, did not disclose the existence of the agreement either to the arbitrator or to the Superior Court judge who approved the arbitrator's award. Instead, Winthrop claimed, the attorney had submitted an affidavit and records which showed that Lowenthal's legal fees were based on an hourly compensation rate. Winthrop asserted that the nondisclosure of the fee agreement and presentation of mis-

---

[1] The arbitrator did not indicate how much of the $35,400 represented costs. However, it is obvious from the record that legal fees formed the major share of the award.

[2] The final judgment reflected additional costs, including legal fees given to Csaplar & Bok by Superior Court judges in connection with post-arbitration matters.

[3] The existence of the agreement was disclosed by Mr. Singer to Winthrop's counsel over a year after the judgment was entered.

leading records constituted fraud, and, therefore, the judgment must be vacated.

At the hearing in the Superior Court on Winthrop's motion, Mr. Singer acknowledged that the existence of the contingent fee agreement had not been disclosed to the arbitrator or to the Superior Court judge who had approved the award. He argued, however, that his actions were not fraudulent because his affidavit and accompanying records did not suggest Lowenthal had any express or implied obligation to pay Csaplar & Bok's normal time charges reflected therein. He also contended that the motion was not timely.[4] The motion judge agreed and ruled that Winthrop's motion, as it related to rule 60(b)(3), was filed too late.

The motion judge recognized, however, that there is no time limitation which would bar a court from granting relief if there has been fraud on the court. *MacDonald* v. *MacDonald*, 407 Mass. 196, 202 n.10 (1990). He consequently considered whether Mr. Singer's nondisclosure of the contingent fee agreement and the contents of his affidavit and accompanying records amounted to such fraud, ruling that Mr. Singer's conduct did not constitute fraud on the court because "[a]t no time did [Mr. Singer] state that Lowenthal was liable on an hourly billing rate."[5] The motion judge interpreted the fee provision not to "require Lowenthal to have incurred, or have been personally liable for, the fees." He concluded that, in any event, the amount of legal fees awarded to Lowenthal was reasonable even if the arbitrator had known of the contingent fee agreement. Winthrop has appealed the denial of its motion.

---

[4] Mass.R.Civ.P. 60(b) requires a motion to vacate for fraud pursuant to rule 60(b)(3) be made "within a reasonable time, and . . . not more than one year after the judgment . . . was entered . . . ."

[5] The motion judge also stated that, "[w]hile it is true that [Mr. Singer] never disclosed the contingent fee agreement, Winthrop's counsel was free to inquire as to the agreement on cross-examination." It is not clear, however, that there was an opportunity for cross-examination. As we read the record, the award of legal fees was based on Mr. Singer's affidavit and the attached records; neither the arbitrator nor the Superior Court judge who confirmed the award conducted an evidentiary hearing on the amount of legal fees to be awarded to Lowenthal.

We agree with the motion judge that Winthrop's motion seeking relief under rule 60(b)(3) was not timely filed. We also agree — although for somewhat different reasons, which we proceed to explain — that Mr. Singer's conduct did not amount to fraud on the court.

Traditionally, a court has the inherent power to vacate a judgment that has been obtained by fraud on the court. *Hazel-Atlas Glass Co.* v. *Hartford-Empire Co.*, 322 U.S. 238, 244 (1944). The adoption of the Rules of Civil Procedure did not in any respect reduce that power, and rule 60(b) specifically states that "[the] rule does not limit the power of a court . . . to set aside a judgment for fraud upon the court."

Fraud on the court implies corrupt conduct and embraces " 'only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication . . . .' " *Pina* v. *McGill Dev. Corp.*, 388 Mass. 159, 165 (1983), quoting from *Lockwood* v. *Bowles*, 46 F.R.D. 625, 631 (D.D.C. 1969). *MacDonald* v. *MacDonald*, 407 Mass. at 202. "Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court. Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court." *United States* v. *International Tel. & Tel. Corp.*, 349 F. Supp. 22, 29 (D. Conn. 1972)(citations omitted). Also see *Kerwit Med. Prod., Inc.* v. *N. & H. Instruments, Inc.*, 616 F.2d 833, 837 (5th Cir. 1980); *Pina* v. *McGill Dev. Corp.*, 388 Mass. at 165-168; *Reilly* v. *Local 589, Amalgamated Transit Union*, 22 Mass. App. Ct. 558, 571 (1986). Further, fraud on the court cannot "embrace [just] any conduct of an adverse party of which the court disapproves; to do so would render meaningless the one-year limitation on motions [brought] under [rule] 60(b)(3)." *Kupferman* v. *Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir.

1972). *Great Coastal Exp.* v. *International Bhd. of Team-sters*, 675 F.2d 1349, 1356 (4th Cir. 1982). Thus, not all fraud is fraud on the court. 11 Wright & Miller, Federal Practice & Procedure § 2870, at 253 (1973).

Here, the source of the award of legal fees is the provision in the contract between Winthrop and Lowenthal stating that the prevailing party in any action or proceeding "shall be entitled to recover *its costs and reasonable attorney's fees*" (emphasis added). In order to consider whether Mr. Singer's conduct constituted fraud on the court, we first determine if he was required to disclose the existence of the contingent fee agreement.

Winthrop contends that the fee provision reflects the parties' intention that the prevailing party be made whole by any arbitration award by receiving the actual damages it had incurred, its costs, and those legal fees, provided that they were reasonable, that it would be obligated to pay in connection with the action or proceeding. Therefore, according to Winthrop, Mr. Singer was required to disclose the existence of the contingent fee agreement because it set out the obligations of Lowenthal to his attorney.

Mr. Singer disagrees with Winthrop's interpretation of the fee provision, as did the motion judge. Mr. Singer claims that the provision did not restrict the fee award to the amount the prevailing party actually pays or is obligated to pay its attorney. Rather, the prevailing party, according to Mr. Singer, is entitled to receive, in the form of damages, an amount determined by the fact finder to be a *reasonable attorney's fee*, even if that amount exceeds the amount that the prevailing party would have been obligated to pay its attorney. He argues the existence of the contingent fee agreement plays no part in the determination of a "reasonable" fee and, therefore, did not have to be disclosed.

We reject Mr. Singer's interpretation. Based upon the language used and the obvious purpose of the provision in the contract between the parties, we conclude that the parties intended that the prevailing party would be reimbursed for the legal fees it was obligated to pay its lawyer, provided that

such fees did not exceed an amount that was determined to be reasonable.[6]

Under our interpretation, therefore, Mr. Singer was required to disclose the existence of the contingent fee agreement. That agreement stated that Csaplar & Bok would receive as legal fees a sum equal to one-third of any amount collected from Winthrop as a result of the arbitration proceeding. Once a person enters into a contingent fee agreement, he cannot be required to pay legal fees greater than the maximum amount spelled out in that agreement. See *Matter of Kerlinsky*, 406 Mass. 67, 73 (1989). Lowenthal's obligation under the contingent fee agreement, as we interpret it, was to pay to Csaplar & Bok, as legal fees, one-third of the amount awarded by the arbitrator as compensatory damages. The losing party, here Winthrop, was required by the provision in its contract with Lowenthal to pay Lowenthal's legal fees, but only those reasonable fees that Lowenthal would have been obligated to pay. Therefore, the contingent fee agreement, so long as the fee provided therein was reasonable, controlled the situation here.[7] The arbitrator could not have decided the matter before him properly unless he was made aware of the contingent fee agreement.

---

[6] We emphasize that we are concerned in this case with a provision in a contract where the parties agreed to shift payment of legal fees to the losing party. The decisions involving statutes that call for the shifting of payment of legal fees to the losing party are not applicable. In those decisions, the legislative policies involved in the enactment of the statutes are of major importance, and those policies are not present where parties voluntarily agree to shift the payment. Thus, *Blanchard* v. *Bergeron*, 109 S. Ct. 939 (1989), and similar cases do not control.

[7] In *Northern Heel Corp.* v. *Compo Indus., Inc.*, 851 F.2d 456, 475 (1st Cir. 1988), the court held on facts similar to this case that, in Massachusetts, where a contingent fee agreement between the prevailing party and its lawyer "provides a clear and workable formula for determining the amount of fees, the terms of the agreement will usually control . . . [and] the contingent fee [agreement] should be enforced unless it is unreasonable under the circumstances." The foundation for that statement is, however, not very solid. We disagree with the Federal court that *First Natl. Bank of Boston* v. *Brink*, 372 Mass. 257, 264-265 (1977), is clear precedent on the question. It should also be noted that the fee calculated according to the contingent fee arrangement in the *Northern Heel Corp.* case was actually *higher* than the fee originally claimed.

We now address the question whether Mr. Singer's conduct fell to the level of fraud on the court. Although he should have disclosed the existence of the contingent fee agreement, we cannot conclude that his conduct amounted to a fraud on the court. Our ruling that Mr. Singer was required to disclose the existence of the contingent fee agreement is based on our interpretation of the provision for "reasonable attorney's fees" found in the contract between the parties and our rejection of Mr. Singer's interpretation of that contract. In regard to contractual fee-shifting provisions, however, we are unaware of any clear precedent that would have made the interpretation we have adopted known to the bar.[8]

We could end our discussion at this point and affirm the action of the motion judge in denying Winthrop's motion. However, because we have concluded that the contingent fee agreement controls and its existence should have been made known to the arbitrator, we are left with the abiding conviction that justice has not been done in respect to the issue of legal fees, a matter of particular concern to the court. *Trustees of Tufts College* v. *Ramsdell*, 28 Mass. App. Ct. 584, 585-586 (1990). We therefore consider whether clause 6 of Mass.R.Civ.P. 60(b), 365 Mass. 829 (1974), which authorizes relief from the operation of the judgment, is "an appropriate provision under which to consider vacating the judgment." *Bowers* v. *Board of Appeals of Marshfield*, 16 Mass. App. Ct. 29, 33 (1983). The fact that Winthrop failed to so classify its motion is not dispositive. *Ibid.* See *Freitas* v. *Freitas*, 26 Mass. App. Ct. 196, 199 (1988).

"In essence, rule 60(b)(6) vests 'power in courts adequate to enable them to vacate judgments whenever such action is

---

[8]Even if Mr. Singer's interpretation of the fee provision were correct, we believe the better practice would have been to make full disclosure. There is respected authority in some fee-shifting cases that a contingent fee agreement should be disclosed because it may be considered for purposes of determining what is a reasonable fee under the Canons of Ethics. See *O'Hara* v. *Robbins*, 13 Mass. App. Ct. 279, 288 n.3 (1982); *Farmington Dowel Prod. Co.* v. *Forster Mfg. Co.*, 421 F.2d 61, 86-91 (1st Cir.), appeal after remand, 436 F.2d 699 (1st Cir. 1970).

appropriate to accomplish justice.' " *Parrell* v. *Keenan*, 389 Mass. 809, 815 (1983), quoting from *Klapprott* v. *United States*, 335 U.S. 601, 615 (1949). *Freitas* v. *Freitas*, 26 Mass. App. Ct. at 198. Generally, in the interests of finality of judgments, "the operation of rule 60(b)(6) must receive 'extremely meagre scope.' " *Bowers* v. *Board of Appeals of Marshfield*, 16 Mass. App. Ct. at 33, quoting from *Rinieri* v. *News Syndicate Co.*, 385 F.2d 818, 822 (2d Cir. 1967). It follows that relief under rule 60(b)(6) requires compelling or extraordinary circumstances. *Bromfield* v. *Commonwealth*, 400 Mass. 254, 257 (1987). See also *Ackermann* v. *United States*, 340 U.S. 193, 198-199 (1950).[9]

We conclude from the record that such compelling circumstances are present in this case.[10] The arbitrator found that Lowenthal had incurred $17,200 in damages. He awarded the sum of $35,400 which he stated "represents Mr. Lowenthal's legal fees and costs." The choice of language by the arbitrator leads us to believe that he shared our interpretation of the fee provision and believed that Mr. Singer's affidavit and records represented Lowenthal's obligation to the law firm. Further, the sizeable difference between the actual damages and the amount of the legal fees awarded is cause for concern. Finally, the arbitrator was unaware of the contingent fee agreement, a material and significant fact. "It is the function of rule 60(b)(6) 'to preserve the delicate balance between the sanctity of final judgments . . . and the incessant command of the court's conscience that justice be done in light of *all* the facts.' " *Freitas* v. *Freitas*, 26 Mass. App. Ct. at 198, quoting from *Bankers Mortgage Co.* v. *United States*, 423 F.2d 73, 77 (5th Cir.), cert. denied, 399 U.S. 927

---

[9]There is no time limit other than "within a reasonable time" for bringing a rule 60(b)(6) motion. Here, Winthrop brought its motion, which we now treat as a rule 60 (b)(6) motion, shortly after it learned of the existence of the contingent fee agreement. We hold that it was timely filed.

[10]We are aware that "relief under rule 60(b)(6) is limited to instances 'when the vacating of judgment is justified by some reason *other* than those stated in subdivisions (1) through (5).' " *Parrell* v. *Kennan*, 389 Mass. at 814, quoting from *Chavoor* v. *Lewis*, 383 Mass. 801, 806 (1981)(emphasis in original). We conclude from our examination of the record that *other* reasons are present here.

(1970)(emphasis in original). We think that the interests of justice will best be served by allowance of the 60(b)(6) motion. For the reasons stated in this opinion, that portion of the arbitrator's award establishing legal fees should be vacated on the ground that it was "procured by . . . undue means." See G. L. c. 251, § 12(*a*)(1).

The judgment is vacated. A new judgment is to be entered in the Superior Court vacating the portion of the arbitrator's award establishing legal fees and confirming that portion fixing damages in the amount of $17,200 in favor of Lowenthal. Interest up to the date that the award was originally confirmed in the Superior Court (March 17, 1987) is to be added to the amount of damages found by the arbitrator. The judgment shall also provide for attorney's fees to Lowenthal in an amount equal to one-third of the damages plus the allowed interest. We are aware that legal fees were also awarded as a result of certain appeals by Winthrop on other matters in regard to the arbitration proceedings. Because the contingent fee agreement was in existence at the time of these proceedings, unbeknownst to the Superior Court judges, those awards of legal fees are vacated. See *Matter of Kerlinsky*, 406 Mass. at 73, where the court stated, "[i]n the absence of a valid supplementary agreement for extra compensation in the event that an appeal had to be taken or defended, the 33⅓% cap on compensation in the agreement is to be construed as including payment for the rendition of all legal services, both trial and appellate, necessary to bring the claim to a final conclusion."

*So ordered.*