Connon, J.
This matter is before the Court on plaintiffs motion pursuant to Mass.R.Civ.P. 37, 59 and 60(b) to set aside the jury verdict and grant a new trial and to impose sanctions on the grounds that such extraordinary relief is warranted by the defendant’s misconduct. For the reasons discussed below the plaintiffs motion is ALLOWED.
Also before the Court is the plaintiffs claim of unfair and deceptive trade practices in violation of G.L.c. 93A. The Court takes no action with regard to this claim because a new trial is allowed herein.
*109 Background
On July 18, 1990, Karen Bobo purchased a new Mitsubishi Gallant that was designed, manufactured and tested by Mitsubishi Motors Corporation and distributed by Mitsubishi Motor Sales of America. On the morning of January 29, 1993, Karen Bobo was operating the Gallant at a speed of approximately 40 mph or less. Another vehicle failed to obey a stop sign and struck Ms. Bobo’s car on the passenger side. The front passenger side door opened upon impact. The car spun clockwise and slid into a tree that intruded into the car via the open passenger side door and struck Ms. Bobo’s head. She suffered catastrophic brain injuries and remains in a persistent vegetative state.
Plaintiff James Bobo, the spouse of Karen Bobo brought suit against the defendants on September 19, 1994, contending that the defendants breached their warranties and were negligent, and that their conduct amounted to a violation of G.L.c. 93A. Specifically, plaintiffs allege that the Mitsubishi Gallant, owned and operated by Karen Bobo, was designed and built with a defective door latching system which allowed for unintentional door openings during foreseeable collisions resulting in inadequate protection to occupants, and that defendants failed to warn of the unreasonably dangerous condition.
On May 12, 1998, this Court issued an order granting plaintiffs motion to compel responses to plaintiffs second request for production of documents.[3] The Court’s order was not limited. Defendants produced only a one-line computer summary entry for over 51,000 warranty incidents involving door latch defects and failures. Defendants did not produce the full claim information from dealers and customers prior to trial in violation of the Court’s order.
The trial commenced on October 6, 1998 During the trial the defendants, despite repeated promises to the contrary, continued to refuse to comply with the Court’s directives.[4] In response to a motion by the plaintiff for sanctions, defendant produced an affidavit of Michael Impullitti, the Warranty Administration Manager. Mr. Impullitti attested to the fact that when a hard copy of warranty data stored in the electronic warranty system is needed, such document is created in the form of a printout with a number of line entries, setting forth data fields.[5] The defendant’s response to the request for such hard copies was woefully deficient. The defendant merely produced a general computer summary, consisting of one-line entries for approximately 51,000 claims. The defendant never produced the full warranty information, which, as their Warranty Administration Manager attests, they were capable of producing.
Further, the defendant made misrepresentations to the Court regarding the Mitsubishi latching system.[6] Contrary to counsel’s suggestion at trial, Mitsubishi employs the same type of latching system in all models. The misrepresentation induced the Court to limit the plaintiff presentation to evidence of identical latches.[7]
The plaintiff suffered substantial prejudice from the defendant’s conduct in concealing information that would have increased both the quality and quantity of liability evidence regarding what exactly the defendant knew about performance failures of similar doors and latching systems.
On November 2, 1998, the jury returned a verdict in favor of the defendants on the negligence and warranty claims.[8]
Discussion
The plaintiff petitions this Court for relief from judgment, allowance of a new trial and the imposition of sanctions on the grounds that the defendant has additional evidence on the question of liability that was not presented at the trial in violation of an express order to do so. Rule 60(b)(3) of the Massachusetts Rules of Civil Procedure provides that"... the court may relieve a party or his legal representative from a final judgment, order, or proceeding for . . . fraud . . . misrepresentation, or other misconduct of an adverse parly.[9] The Rule permitting relief from judgment is remedial in nature and subject to liberal interpretation and application in a situation where mischief leading to judgment occurs in the pretrial stage. Berube v. McKesson Wine & Spirits Co., 7 Mass.App.Ct. 426, 429 (1979). A motion for relief from judgment is addressed to the sound discretion of the trial judge. Chiu-Kun Woo v. Moy, 17 Mass.App.Ct. 949 (1983), rev. denied 391 Mass. 1104. Exercise of discretion with respect to a motion for relief from judgment involves the absence of arbitrary determination, capricious disposition or whimsical thought. Berube, 7 Mass.App.Ct. at 429, quoting Davis v. Boston Elev. Ry., 235 Mass. 482, 496 (1920). In considering a motion for relief from judgment, the judge should consider whether the conduct involved rises to the level of a ”deliberate and calculated plan to use the judicial system in an unconscionable and fraudulent manner." Pina v. McGill Development Corp, 388 Mass. 159, 168 (1983).
Massachusetts Rules of Civil Procedure Rule 59(a)(1) “permits the granting of a new trial ‘in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the Commonwealth.’ ” Galvin v. Welsh Mfg. Co., 382 Mass. 340, 342 (1981). Allowance of a new trial is within the trial court’s discretion. Commonwealth v. Johnson Insulation, 425 Mass. 650, 668 (1997). A new trial “ought not to be granted unless on a survey of the case as a whole it appears to the judicial conscience and judgment that otherwise a miscarriage of justice will result.” John J. Williams Ins. Agency v. Putignano, 36 Mass.App.Dec. 135, 140 (1967). A judge may grant a new trial for any cause which in his judgment may have prevented a party from having had a fair trial. *110 Bondsville Realty Corp. v. Diamond Internatl. Corp., 44 Mass.App.Dec. 164, 168 (1970), affirmed 360 Mass. 870. In ruling on a motion for a new trial a judge must necessarily consider the probative force of the evidence and not merely the presence or absence of any evidence upon a disputed point. Phachansiri v. City of Lowell, 35 Mass.App.Ct. 576, 579-80 (1983), rev. denied 416 Mass. 1110.
Massachusetts Rules of Civil Procedure Rule 37(b), as amended, 390 Mass. 1208 (1984), concerns sanctions for failure to comply with an order of a court. Since January 1, 1984, sanctions under Rule 37(b) need not be based on a wilful failure to comply. The purpose of the amendment was “to increase compliance with discovery orders, by making it easier for parties to achieve, and judges to award, sanctions for failure to comply with a discovery order.” Greenleaf v. Massachusetts Bay Transportation Authority, 22 Mass.App.Ct. 426, 430-31 (1986) quoting Reporters’ Notes to Mass.R.Civ.P. 37, Mass. Ann. Laws, Rules of Civil Procedure at 15 (1986). Rule 37(b)(2) provides:
If a party fails to obey an order to provide or permit discovery, the court in which the action is pending may make such orders in regard to the failure as are just, and among others, the following:
. . . the court may require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorneys fees, caused by the failure.
The purpose of the Massachusetts Rules of Civil Procedure governing discovery is to elicit the facts of a case before trial. The Rules are designed to allow the parties access to the same information, in order to prevent trial by ambush.
Parties who are other than forthright in responding to discovery should be warned. Parties who abuse the discovery tools to oppress the opponent should be curbed. A trial is still a search for truth. It should not be game of “hide and seek.”
Joseph R. Nolan, Civil Practice §505, pp. 501-02 (1992).
The conduct of the defendant in the present case constitutes culpable noncompliance with the Rules and this Court’s express order. The defendant failed to respond adequately to the plaintiffs repeated requests for production of documents pursuant to Rule 34, violated an order of this Court compelling such production, and ignored the Court’s directives through the course of the trial to provide the full warranty information.
The reasons proffered by the defendant for the noncompliance are unpersuasive. The defendant misrepresents that it complied with the Court’s order to the extent of its ability to do so. The defendants were able to create a hard copy of an individualized full warranty form for Ms. Bobo’s vehicle. This is precisely the type of detailed information that the Court ordered the defendant to produce. Thus, the defendant’s stubborn noncompliance was not due to an inability to comply. Further, the defendant raised the alleged irrelevance of the documents sought in its opposition to the plaintiffs motion to compel production. This Court considered defendant’s argument, rejected it and issued an order which the defendant was obligated to obey.
Sanctions, in the form of attorneys fees, are an appropriate response to the defendant’s flagrant disobedience. [10] This ruling is “provoked not by a technical violation of the discovery rule but by a persistent and substantive one.” Maywood Builders Supply Co. v. Massachusetts Bay Trans. Auth., 22 Mass.App.Ct. 944, 945 (1986) (This decision upheld a Superior Court order dismissing an action as a sanction for a persistent failure to comply with discovery orders. The court stated ‘To be sure the judgment is severe, but it followed only after several efforts to flush out documentary material fundamental to the proof of the case).
It is the Court’s determination that the conduct involved rises to the level of a “deliberate and calculated plan to use the judicial system in an unconscionable and fraudulent manner.” Pina, 388 Mass. At 168. The defendant withheld documentation that was relevant to the issue of liability and thereby impeded the plaintiffs presentation of its case. The plaintiff is entitled to relief from judgment. A new trial is necessary to prevent a miscarriage of justice.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs be relieved from judgment and granted a new trial. Further, the defendant is hereby ORDERED to pay the expenses and attorneys fees incurred by the plaintiff during the trial.

 Request No. 5 reads: “For each incident for which there was a complaint, letter, claim, notice, or other report known to Mitsubishi concerning the failure of the door latch on Mitsubishi passenger vehicles or light trucks and/or unintentional or inadvertent door openings on Mitsubishi passenger vehicles or light trucks utilizing a door latching assembly with a tension release rod between the inside door handle and the door latching mechanism, please produce: (a) The complaint, letter, claim, notice, or other report known to you ...”

 The following excerpts from the trial transcript demonstrate a pattern of stubborn refusal to comply with the Court’s directives ordering the defendants to produce the full warranty information. Additionally, defendants knowingly made arguments to exclude evidence that were based on their own failure to produce the foundation for such evidence.
Thursday, October 8, 1998:
MR. DURNEY: “[Mr. Elwell] hasn’t the slightest idea whether whoever that person was who called really had the problem he talked about, what the problem was. No one has seen that. He’s not seen it ... He doesn’t even know whether or not the vehicles were the same . . . How does he know the door opened? . . . Now Mr. Elwell can’t *111 take the stand and satisfy the tests... for the admissibility of expert testimony by saying simply . . . they’re warranty claims and, yeah, I think that that’s representative of a problem, when he has absolutely no idea what’s going on ... Was it the same set of circumstances? Was it the same vehicle? Was it the same latching system? Was it the same purported mode of failure? (10/8/98 Tr. At 269-70, 295-96.)
THE COURT: “. . . [T]hat’s really the prime issue in this case. What was Mitsubishi being told and what did they do about it? That’s what’s important in this case is that the car was sold in 1990. The accident occurred in January of 1993. And so whatever they learned by way of complaints and what they did about them is relevant and relevant for a jury’s consideration.” (Id. at 300.)
Friday, October 9, 1998:
MR. DURNEY: “I’d like to go back through them and ask [Mr. Elwell] what additional information would typically be contained in a warranty record . . .” (10/9/98 Tr. at 53.)
MR. FRYHOFER: ”... if they’ve got additional information that came into their hands, then they didn’t produce it in compliance with Your Honor’s own order after the hearing in this courtroom and we would be moving for sanctions for default. . .” (10/9/98 id. at 54.)
THE COURT: “... [D]oes your client have additional information to backup these computer documents?” (Id. at 55.)
MR. DURNEY: “I — I have no further information than this ... I don’t believe that there is any additional information. Your Honor. I’ll have to ask that question.” (Id.) (The Court received no response to this question, despite the presence of representatives of Mitsubishi responsible for the production of documents pertaining to other similar incidents.)
Tuesday, October 13, 1998:
THE COURT: “And I think during one of the side bars I think I even asked, you know, were there backup information to support and there is backup information.” (10/13/98 Tr. at 3-4.)
MR. DURNEY: "What I would like to do, well, I have to call California when California opens, which is around 11:30, and find out what they have. (Id. at 18.)
THE COURT: “Find out what they have . . . ask him with respect to the summary sheets, the 50,000 warranty claims what other information do they have that would support and we’ll look at it again.” (Id. at 18-19.)
THE COURT: (at the end of that day) “Have they arrived for work in California yet?” (Id. at 269.)
MR. DURNEY: “I haven’t hadachance to get the response.” (Id.)
Wednesday, October 14, 1998:
MR. DURNEY: “I’ll have a written response tomorrow morning, but I can tell you this: I learned it’s a paperless system.” (10/14/98 Tr. at 222.)
THE COURT: “Then give me the disk.” (Id.)
MR. DURNEY: “I don’t have a computer disk but I’ll explain it to you in detail.” (Id.)
THE COURT: “All right. 4 o’clock.” (Id.)
MR. DURNEY: “May I ask that we take it up in the morning with the opportunity to present papers. Because I’ll supply the Court with an affidavit.” (Id.)

 As evidenced by Ms. Bobo’s warranty record, there are over thirty data fields which could have been included in defendant’s production. The computer summary the defendant actually produced contains only seven data fields. Defendant’s intentional concealment is shown by their omission from the summary of the data field entitled “cause,” that would have indicated the defendant’s evaluation of a specific problem.

 MR. DURNEY: “Mitsubishi may have latches that are different from the latch in the 1990 Gallant... If a door comes open and it involves a different vehicle and a different latching system, then how can it be notice of a defect in regards to the Mitsubishi Gallant latching system?” (10/8/98 Tr. at 303.)

 Consequently, the Court excluded all but 300 of the 4,064 warranty defect claims.

 The Court reserved the c. 93A claim for its determination.

 The Reporters’ Notes to Mass.R.Civ.P. 60, Mass. Ann. Laws, Rules of Civil Procedure (1973) further provide:
Rule 60(b)(3) includes any act by which a party obtains a judgment under circumstances which would make it inequitable for him to retain its benefit. Fraud covered by Rule 60(b)(3) must be of such a nature as to have prevented the moving party from presenting the merits of the case.

 A new trial is allowed herein. Therefor, the attorneys fees caused by the defendant’s noncompliance will be the cost of the original trial, which has been rendered a nullity.