Lauriat, J.
The plaintiff, Susan M. Farago, as Administratrix of the Estate of William S. Farago (the “Estate”), originally brought this action against the defendants Def-Tec Corp. (“Def-Tec”), Defense Technology Corporation of America, Inc., a Wyoming corporation (“DT-Wyoming”), and Adamson Industries, Corp. (“Adamson”), alleging negligence and breach of warranty after William S. Farago died as a result of being sprayed with a can of MK-VI Pepper Mace (“Pepper Mace”) allegedly manufactured by Def-Tec, distributed by DT - Wyoming, and finally sold at retail by Adamson to the Town of Natick Police Department (“Natick”). Counsel for DefTec represented that Def-Tec was a defunct corporation and DT-Wyoming answered the Complaint stating that it was without knowledge of whether it manufactured the Pepper Mace. As a result of these representations, the Estate subsequently joined Defense Technology Corporation, Defense Technology Corporation of America, a Delaware corporation, American Body Armor & Equipment, Inc., Armor Holdings, Inc., XM Corporation, a Wyoming corporation, XM Corporation, a Florida corporation, Defense Technology International, Inc., and Robert Oliver (collectively “the Additional Defendants”).
In accordance with an order of the court dated April 11, 2000, the Estate and Adamson have now moved, pursuant to Mass.R.Civ.P. 37, for sanctions to be assessed against Def-Tec and DT-Wyoming. As grounds for the motion, the Estate and Adamson assert that certain categories of documents that the Estate originally requested of them in 1996,[1] but which were not uncovered until a document inspection on March 28, 2000, were found to contain information that would have avoided the need for the Estate to join and litigate against the Additional Defendants. Moreover, but for the defendants’ failure to produce the documents in 1996, Adamson would have been dismissed from the suit because those documents show that Adamson never had custody of the Pepper Mace.
For the following reasons, the Estate’s Motion for Sanctions is allowed, and Adamson’s Motion for Sanctions is also allowed.
BACKGROUND
In April of 1992, William S. Farago (“Farago”), who suffered from a severe psychiatric disorder, died after being restrained by Natick police officers using MK-VI Pepper Mace (“Pepper Mace”). Pepper Mace was manufactured by Def-Tec until 1992 and distributed by both Def-Tec and DT-Wyoming in that same time period. In March of 1995, the Estate filed a complaint alleging that the Pepper Mace used to restrain Farago was manufactured by Def-Tec, distributed by DT -Wyoming, and sold by Adamson to Natick. The complaint specifically identified the Pepper Mace by its trade name. The Estate provided Def-Tec and DT-Wyoming’s defense counsel with a copy of a state crime laboratory report identifying the Pepper Mace canisters used in the incident as “MK-VI Pepper Mace” *331 bearing “Serial Number[s] 00017562 and 00017594" before they filed an answer to the complaint.[2]
DT -Wyoming answered the original complaint on May 2, 1995, but while admitting that it was a Wyoming corporation, professed that it was without sufficient knowledge or information to admit or deny plaintiffs allegations that Def-Tec was an Ohio corporation or that both Def-Tec and DT-Wyoming had manufactured and/or sold Pepper Mace. Def-Tec did not answer the original complaint. Instead, its counsel represented that Def-Tec, unlike DT-Wyoming, was then an essentially defunct corporation that, in any event, had been improperly named because it had played no role in the manufacture or distribution of the Pepper Mace. All parties agreed early in the litigation that it was essential to determine the role and viability of Def-Tec. Each party agreed that the most reasonable and efficient way to make such a determination was for the Estate to serve interrogatories upon DT-Wyoming which, unlike DefTec, had remained a going concern.
Thereafter, the Estate served interrogatories upon DT-Wyoming which, among other things, asked DT-Wyoming to provide information as to when the subject products had been wholesaled and retailed. On February 4, 1997, DT-Wyoming answered the interrogatory stating that it was investigating to see if such information was available and would supplement its answers as soon as the information became available. In its answers, DT-Wyoming also stated that it was aware that the “incident involved two MK-VI canisters with respective serial numbers 0017562 and 0017594.” It further answered that it was aware of a relationship between DT-Wyoming and Def-Tec which may have included a buy-out of Def-Tec’s assets and that information relative to the buy out and/or purchase of Def-Tec’s assets would be provided.
On March 5, 1997, the Estate served document requests upon DT-Wyoming which called for it to produce all documents relating to the sale of the subject Pepper Mace canisters. Specifically, Request No. 5 sought: “(a]ny and all documents relating to the purchase, sale, transportation, shipping delivery and/or distribution of the product and/or identical products of the same batch, lot group or unit.” Additionally, Request No. 22 sought: “(a]ny and all documents that describe, define, list or identify the product, including . . . (c) any numerical or alphabetical markings including the serial number . . Requests Nos. 29 and 36 also specifically called for production of documents relating to the chain of distribution and sale of the canisters. Responding to the Estate’s document requests in August 1997, DT-Wyoming provided no documents relating to the sale of the subject canisters of Pepper Mace. Instead, DT-Wyoming and Def-Tec provided documents and answers to interrogatories relating to the packaging, sale and composition of a different pepper spray product known as “First Defense.”
On October 6, 1997, the deposition ofDT-Wyoming was commenced in Casper, Wyoming. After counsel for the Estate had already traveled to Wyoming, the deponent, David Dubay (“Dubay”), first explained that DT-Wyoming had improperly identified the product involved in the incident and had erroneously responded to all of the Estate’s prior discovery requests by referencing and producing documents relating to the wrong pepper spray product. Dubay testified that the correct product had been manufactured and distributed not only by DT-Wyoming, but also by its predecessor, Def-Tec, which had yet to file an answer.
Upon learning at the October 1997, deposition that DT-Wyoming’s prior discovery responses were erroneous, the Estate sought from DT -Wyoming and Def-Tec corrected answers to its prior discovery requests with respect to the correct product, namely Pepper Mace. The only response that the Estate then received came in December 1997, in the form of a belated answer by Def-Tec to the Estate’s complaint.
After receiving Def-Tec’s answer, the Estate served interrogatories and document requests upon Def-Tec that were virtually the same to those previously served on DT-Wyoming. Request Nos. 5, 22, 24 and 30 sought documents from Def-Tec relevant to the manufacture, sale, and chain of distribution of the Pepper Mace canisters.
Def-Tec’s responses to the Estate’s Requests for Production of Documents were virtually identical to DT-Wyoming’s responses. Several additional documents were eventually produced in Def-Tec’s March 12, 1998, Supplemental Responses to the Estate’s document requests, but no documents were produced which related to the identity of the entity that actually manufactured, distributed, and sold the subject canisters of Pepper Mace.
On March 31, 1998, the Estate filed a motion, pursuant to Mass.R.Civ.P. 37(a), for an order compelling corrected, responsive discovery responses. That motion.was allowed by the court (Connolly, J.) on April 21, 1998. As of April 7, 1998, the Estate still had not had not been provided with documents it had requested that would confirm the identity of the entities that had manufactured, distributed, and sold the subject Pepper Mace canisters. Def-Tec argued that it was unable to provide such information because Def-Tec was no longer a going concern and its successor, DT-Wyoming, had since been sold to a new set of interests under the control of a Florida company known as Armor Holdings.
Consequently, in late Spring and early Summer, 1998, the Estate was obliged to amend its complaint to add eight new parties to the case including Armor Holdings, Inc. (“Armor”) and its subsidiaries, American Body Armor (“ABA”) and Defense Technology Corp. of America, a Delaware Corporation (“DT-Delaware”). Armor, ABA, and DT-Delaware were added because they were each corporate successors of DT-Wyoming. In 1996, DT-Delaware, which is a wholly- *332 owned subsidiary of Armor (previously known as ABA), had purchased DT-Wyoming and continued the business under the same name, “Defense Technology Corporation of America.”
Three other defendants joined at the same time were XM Corporation (a Wyoming Corporation), XM Corporation (a Florida corporation), and Defense Technology International, all of which were also believed to be successors in liability to DT-Wyoming. Under the Armor purchase agreement, the corporate shell remaining after the DT-Wyoming sale in 1996 was to change its name to XM Corporation, a corporation that later moved its operation and reincorporated in Florida to act as an international distributor of pepper spray products for Armor. Yet another defendant, Central Equipment (“Central”) was added because of continued uncertainty as to whether defendant Adamson was the correct distributor, and Central was understood to have been a Pepper Mace distributor that may have sold the subject product to the Natick Police department. At that time, it was still not clear from the discovery responses of Def-Tec and DT-Wyoming which distributor in Massachusetts had actually sold the subject Pepper Mace to the Natick Police. Finally, Robert Oliver was named as a defendant because he had been the principal officer, director and/or shareholder of Def-Tec and DT-Wyoming.
Between April of 1998 and April of 2000, the Estate set about litigating against the additional named parties. The Estate’s efforts included locating, serving process upon and propounding discovery to each additional defendant. The Estate ultimately filed and obtained defaults against XM-Wyoming and XM-Florida, which have failed to appear in this action.
The majority of the Estate’s time, effort and expense between April of 1998 and April of 2000 was spent investigating and litigating against Armor and DT-Delaware. This work included a complete review of the voluminous purchase documentation between DT-Wyoming and Armor, answering discovery propounded by the newlyjoined entities, and multiple motions to compel answers to discovery and production of witnesses who could testily to both successor liability issues and technical issues associated with the product. The Estate conducted independent research into the terms of the asset purchase transaction between Armor and DT-Wyoming in order to oppose a summary judgment motion served by Armor. To further oppose that motion, the Estate procured and reviewed thousands of pages of documents relating to the transaction as well as preparing for and traveling to Jacksonville, Florida to take a deposition of the representative of Armor’s agent who handled the acquisition.
Between April of 1998 and March of2000, while the Estate was devoting resources to conducting discovery against the additional named defendants, Def-Tec provided only two further responses to the Estate’s discovery requests. In October of 1998, Def-Tec answered the interrogatories that the Estate had propounded in February of 1998. Interrogatory No. 15 specifically called for the identification of documents relating to the sale or transfer of the subject product. Def-Tec’s answer was completely unresponsive to that portion of the interrogatory and incorrectly directed the Estate to documents produced by other parties. Def-Tec then made one further supplemental response to the Estate’s document requests on August 31, 1999 but failed to produce any of the documents relating to the chain of distribution of the subject Pepper Mace.
On January 20, 2000, the Estate’s counsel traveled to Jacksonville, Florida for the deposition of Armor and DT-Delaware. At that deposition, the Estate’s counsel learned for the first time that an attorney representing Def-Tec and DT-Wyoming had, at some point, traveled to Rock Creek, Ohio and reviewed documents in connection with this case. From the context of the discussion, the Estate’s counsel understood that the documents reviewed had been incorporated into prior productions and that all responsive documents had already been produced.
On March 21, 2000, after nearly two years of attempting to procure the deposition of Def-Tec's. founder and principal director, Robert Oliver, Def-Tec and DT-Wyoming finally made him available for deposition. On or about the day of the deposition, counsel for Def-Tec and DT-Wyoming mentioned that he had sent an associate from his office, Daniel O. Tracey (“Tracey”), to Rock Creek, Ohio to review Def-Tec documents, and that Tracey had shipped six boxes of Def-Tec documents back to Massachusetts. After Oliver’s deposition and based partly on Oliver’s inability to recall where he had seen particular documents, counsel for the Estate, along with counsel for the other parties, decided to personally review the boxes of documents that had been shipped from Rock Creek.
The parties inspected these boxes on March 28 and 29, 2000, and found them to include detailed logbooks for Def-Tec’s sales of Pepper Mace. The log books identified not only specific lots of canisters by serial number, but also the date of shipment, the name and state of the distributor to whom each canister was sold and the invoice number for each sale. The logs indicated that the canisters bearing serial numbers 0001-7562 and 0001-7594 (those involved in the incident that had been specifically identified in the crime lab reports in 1995), were sold in a lot of fifty canisters to a Richard A. Sherburne, Inc. (“Sherburne, Inc.”) of Massachusetts on December 26, 1990.
The serial number log books confirmed that the subject canisters of Pepper Mace had, in fact, been manufactured and sold by Def-Tec and had been shipped directly from Def-Tec’s Ohio facility to Massachusetts. More importantly, however, the log books clearly showed that the subject canisters could not have been manufactured or distributed by DT-Wyoming because DT-Wyoming did not even exist as an operating *333 business until late in 1990. From the log book entries, it also became evident that Adamson was not the likely distributor and that the Estate would now be faced with filing yet another motion to join the newly identified distributors fully eight years after the incident and more than five years after the present litigation commenced.
Insofar as Armor, ABA and DT -Delaware, had each been joined based on their status as corporate successors of DT-Wyoming, plaintiff was then obliged to discontinue litigation against those parties, immediately settled those claims and filed a stipulation of dismissal. On April 11, 2000, the parties appeared before the court (Lauriat, J.) for a status conference during which the issue of newly produced documents and the previously identified distributor was discussed. At that conference the court scheduled a date for hearing the Estate’s anticipated motion to join the new party and for any motions for sanctions against Def-Tec.
Since March 28, 2000, the Estate has sought to determine whether Sherburne sold the subject canisters to the Natick Police department. The Estate learned that Sherburne had sold the subject lot of Pepper Mace canisters to yet another distributor, AAA Police Supply (“AAA”) in Dedham, Massachusetts. A representative of AAA testified on May 24, 2000, that, because it has a limited, seven-year record retention policy, its own records of Pepper Mace sales prior to 1993 no longer exist. The Natick Police and the Town of Natick have likewise been unable to locate and produce any records confirming purchases of Pepper Mace from Sherburne and/or AAA between 1989 and 1992, because of their own limited record retention policies.
As of March 28, 2000, the date the Def-Tec serial number logs were first produced, the Estate has incurred expenses in the amount of $53,183.50 and attorneys fees in the amount of $11,177.17 associated with litigating against the various parties that had unnecessarily been added by the amended complaint filed in April 1998. The majority of the Estate’s submission constitute fees and expenses incurred since March 1998 relating to the joinder of the unnecessary parties. The Estate, however, has also included various fees incurred prior to March 1998 that related to Def-Tec’s refusal to answer the complaint and DT-Wyoming’s mis-identification of the subject product and its manufacturer upon which this Court’s April 1998 order was based.
At all times throughout this litigation Adamson acknowledged that during the pertinent time period, it was a distributor of products manufactured by DT-Wyoming and Def-Tec, including the Pepper Mace product involved in this matter. Adamson, however, has always asserted that there were other distributors of Pepper Mace in Massachusetts at the time of the incident, and that it did not have any records or information which proved that it was the distributor of the subject Pepper Mace in Massachusetts at that time, and it did not have any records or information which proved that it was the distributor of the actual canisters of Pepper Mace involved in the incident. Had the documents been produced in timely manner, Adamson would have been released from the litigation. Adamson has incurred legal fees[3] in the amount of $23,812.50 and expenses in the amount of $2,465.02 as a result of remaining in the case past the point when the identifying documents were requested.
DISCUSSION
The Estate and Adamson seek an award of sanctions against Def-Tec and DT-Wyoming because of their failure to produce relevant discovery even after the court ordered them to do so. "If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just ...” Mass.R.Civ.P. 37(b)(2). Specifically, “the court may require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorneys fees caused by the failure.” Id. Mass.R.Civ.P. 37 does not require that a party’s failure to comply with a court order be wilful before sanctions may be imposed. Gos v. Brownstein, 403 Mass. 252, 256 (1988). Wilful noncompliance was eliminated as a prerequisite to the imposition of sanctions “to increase compliance with discovery orders, by making it easier for parties to achieve, and judges to award, sanctions for the failure to comply with a discovery order.” Atlas Tack Corporation v. Donabed, 47 Mass.App.Ct. 221, 224 (1999) (citation omitted). Findings of fact and conclusions of law are unnecessary for review of the allowance of a motion pursuant to Mass.R.Civ.P. 37(b). See Greenleaf v. Mass. Bay Trans. Auth., 22 Mass.App.Ct. 426, 431 (1986).
“Sanctions, in the form of attorneys fees, are an appropriate response to [a party’s] flagrant disobedience” of a court’s order to produce documents relevant to the issue of liability. Bobo v. Mitsubishi Motors Corp., Mass. Super. Ct., Civil No. 95-00300 (March 8, 1999) (1999 WL 1318951) [10 Mass. L. Rptr. 108). Fees and costs are appropriately awarded where the failure to produce documents resulted in counsel’s devotion of “a great deal of time and energy to the [issue] which would have been unnecessary if the [documents] had been produced in a timely fashion.” Linnen v. A.H. Robbins Co., Inc., Mass. Super. Ct., Civil No. 97-2307 (May 6, 1999) (1999 WL 317434).
On April 21, 1998, the court (Connolly, J.) ordered Def-Tec and DT-Wyoming to produce certain categories of documents which the Estate had originally requested in 1996.[4] Those documents were not produced until after a document inspection on March 28, 2000. Those documents contained definitive proof as to which entities had custody of the subject Pepper Mace canisters, as well as which entities did not have custody, and thus, were not liable. Specifically, the documents indicated that Adamson never had custody of the subject Pepper Mace. The documents showed that Def-Tec sold the subject *334 canisters to Sherburne, Inc. It was further determined that Sherburne, Inc. sold the canisters to yet another distributor, AAA, after which AAA finally sold the subject canisters to the Natick Police Department.
If the documents had been produced when they were requested, the Estate would not have incurred the fees and expenses associated with joining and litigating against the eight Additional Defendants, because these Additional Defendants never had custody of the subject canisters.[5] As a result of the failure, the Estate was forced to add Sherburne, Inc. and AAA to the cause of action four years after the documents were originally requested. This delay has materially prejudiced the Estate.[6] Additionally, had the identifying documents been produced when requested, Adamson would have long ago been dismissed from this action.
Def-Tec and DT-Wyoming's failure to produce the requested documents caused both the Estate and Adamson to incur fees and costs unnecessarily. DefTec and DT-Wyoming’s failure to produce the requested documents constituted flagrant disobedience of the court’s order. The court will therefore impose sanctions in the form of attorneys fees and costs.
Finally, after review, the court concludes that the sums sought by the Estate and Adamson for attorneys fees and expenses incurred by reason of the defendants' violation of the court’s Order of April 21, 1998, are reasonable, and those sums shall be awarded.
ORDER
For the following reasons, the Plaintiffs Motion for Sanctions is ALLOWED, and the Motion of Defendant Adamson Industries Corp., for Sanctions is ALLOWED. Defendants Def-Tec and DT-Wyoming are hereby ORDERED to pay to the plaintiff Estate, within thirty days of the entry of this Order, attorneys fees in the amount of eleven thousand one hundred and seventy-seven dollars and seventeen cents ($11,177.17) and costs in the amount of fifty-three thousand one hundred and eighty-three dollars and fifty cents ($53,183.50), and to pay to the defendant Adamson, within thirty days of the entry of this Order, attorneys fees in the amount of twenty-three thousand eight hundred and twelve dollars and fifty cents ($23,812.50) and costs in the amount of two thousand four hundred and sixty-five dollars and two cents ($2,465.02).

 The documents and information were requested on numerous occasions, however, Def-Tec and DT-Wyoming repeatedly failed to make the required production despite a 1998 court order to amend their prior discovery responses to correct for their own mis-identification of the subject product and its manufacturer.

 Def-Tec and DT-Wyoming are related entities that once shared the same corporate management, are insured under the same insurance policy and have been represented by the same counsel since the inception of this action.

 Adamson did not have any insurance policy in effect which would have provided coverage or defense costs for this matter. Adamson, a closely-held business owned and operated by Steve and Kim Contarino, has been forced to pay these litigation fees out of its own funds.

 Both the Estate and Adamson requested these documents on several occasions.

 The Additional Defendants were corporate successors of DT-Wyoming. DT-Wyoming never had custody of the canisters.

 The Estate apparently cannot review AAA’s documents or the Natick Police Department’s documents because all documents predating 1993 have been destroyed pursuant to their internal document retention policies.